UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CHRISTOPHER STAMBRO, § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> VANDERHALL MOTOR WORKS, § <br> INC., HALL LABS LLC, AND § <br> GENERAL MOTORS LLC, § <br> § <br> Defendants. § <br> _____ § | No. 1:24–CV–1317-DAE |

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION; AND
(2) GRANTING MOTIONS TO DISMISS

Before the Court is a Report and Recommendation (the "Report") (Dkt. # 29) submitted by United States Magistrate Judge Dustin Howell. The Court finds this matter suitable for disposition without a hearing. After reviewing the Report, the Court **ADOPTS** Judge Howell's recommendation, **GRANTS** Defendant General Motors LLC's ("GM") Rule 12(b)(2) Motion to Dismiss (Dkt. # 4), and **GRANTS** Defendant Hall Lab, LLC's ("Hall") Rule 12(b)(2) Motion to Dismiss (Dkt. # 19).

BACKGROUND

Although the Court and parties are familiar with the facts, the Court will recite the background facts of this matter as stated by Judge Howell in his

Report.[1]  Plaintiff Christopher Stambro ("Plaintiff" or Stambro") initiated this product-liability lawsuit against Defendants GM, Hall, and Vanderhall Motor Works, Inc. ("VMW") based on a collision he suffered on the frontage road of I-35 while driving a 2022 Vanderhall Venice.  (Dkt. # 1-5, at 6.)  Stambro alleges that when he applied the brakes of the vehicle, it lost stability and spun out of control, colliding with a telephone pole.  (Id.)  During the crash, Stambro hit his head on the telephone pole and suffered severe injuries, including a traumatic brain injury.  (Id.)  Based on an alleged defect to the brakes of the vehicle, Stambro brought product-liability claims against Hall and VMW for defective design, failure to warn, and failure to retrofit/recall under theories of strict liability and negligence, as well as claims of negligence against all Defendants.  (Id. at 10–24.)

On November 13, 2024, GM filed a motion to dismiss Stambro's claims for lack of personal jurisdiction.  (Dkt. # 4.)  On November 25, 2024, Stambro filed a response in opposition.  (Dkt. # 13.)  On December 2, 2024, GM filed a reply.  (Dkt. # 14.)  On January 3, 2025, the District Judge originally assigned to this action referred the motion to the Magistrate Judge.[2]  On January 31, 2025, Hall filed its own motion to dismiss for lack of personal jurisdiction.

---

[1] To the extent any objections are made to Judge Howell's recitation of the facts, the Court will note it in the objections discussed below.

[2] This case was not reassigned to the undersigned until February 3, 2025.  (Dkt. # 21.)

(Dkt. # 19.) On February 14, 2025, Stambro filed a response in opposition. (Dkt. # 22.) This motion was also referred to the Magistrate Judge.

Thereafter, on March 11, 2025, this case was partially stayed against Hall due its suggestion of bankruptcy. (Dkt. # 25.) The Court has not yet determined whether the case should be stayed against the remaining defendants. On March 28, 2025, Judge Howell entered his Report, recommending the Court grant both motions to dismiss. (Dkt. # 29.) On April 11, 2025, Stambro filed his objections to the Report. (Dkt. # 30.) The Court will address the objections to the Report below.

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## DISCUSSION

GM and Hall both move to dismiss on the basis that Stambro's claims against them fail for lack of personal jurisdiction since neither company is based in Texas and neither has sufficient contacts with the state to warrant this Court's exercise of personal jurisdiction over them. (Dkts. ## 4, 19.)

In his Report, Judge Howell made the following findings: (1) GM's in-state business is not sufficient to permit the exercise of general jurisdiction over Stambro's claims against it that are unrelated to any activity occurring in Texas; (2) Stambro failed to present evidence rebutting GM's evidence that it did not have awareness that its parts would be put into vehicles later sold in Texas and thus has not established a prima facie case of specific personal jurisdiction over GM based on a stream-of-commerce theory; (3) Stambro has not established the need for jurisdictional discovery related to his claims against GM; (4) Hall's ownership of pertinent patents, contribution to the design of the Vanderhall Venice, and

4

inclusion of an image of VMW's 3-wheeled vehicle on its website fail to establish a prima facie case of personal jurisdiction over Hall based on a stream-of-commerce theory since Hall "did not place a product into the stream"; and (5) Stambro failed to make even a preliminary showing of jurisdiction against Hall to entitle him to jurisdictional discovery against Hall.  (Dkt. # 29.)  For these reasons, Judge Howell recommended the Court grant both motions to dismiss and dismiss Stambro's claims against GM and Hall.  (Id.)  Stambro objects to each of the Magistrate Judge's findings.  (Dkt. # 30.)

    A.    General Jurisdiction Over GM

Stambro argues that the Magistrate Judge failed to adequately take into account that GM's core manufacturing infrastructure is located in Texas.  (Dkt. # 30 at 2.)  Stambro asserts that the Court must take this into consideration because this facility is responsible for the production and manufacture of all of GM's ICE (internal combustion engine) powered SUV's sold worldwide.  (Id.)  Stambro contends that the Magistrate Judge only looked to GM's workforce in Texas as compared to its workforce nationwide but disregarded the totality of GM's business and operations in Texas.  (Id. at 4.)

General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–19 (1984);

Religious Tech. Ctr. v. Liebreich, 339 F.3d 369, 374 (5th Cir. 2003).  A corporate defendant is subject to general jurisdiction where it is incorporated and where it has its principal place of business.  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).  Only in the "exceptional case" may a court exercise general personal jurisdiction over a corporation in a forum different from where it is incorporated or has its principal place of business.  BNSF Ry. Co. v. Tyrrell, 581 U.S. 402 (2017).  To qualify as an "exceptional case" the party asserting jurisdiction must show that the corporation's "operations . . . [are] so substantial and of such a nature as to render the corporation at home in that state."  Id.  Proving such an exceptional case is "incredibly difficult."  Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014).

      Upon careful de novo review, the Court finds that GM's contacts with the state of Texas, including its manufacturing facility, is not sufficient to show that it is "at home" in Texas.  The manufacturing facility is not GM's principal place of business, and Stambro has not proven that this is an exceptional case especially given that GM also maintains manufacturing facilities in many places outside of Texas.  Thus, the Court agrees with the Magistrate Judge and does not find that it has general jurisdiction over GM.

B.Specific Personal Jurisdiction Over GM

Stambro next objects to the Magistrate Judge's finding that no specific personal jurisdiction exists as to GM under the stream-of-commerce theory. (Dkt. # 30 at 7.) In making this finding, the Magistrate Judge determined that Plaintiff failed to present evidence rebutting testimony from GM's senior technical expert that GM "has no knowledge or control where parts ended up' after their sale, and thus Plaintiff failed to show GM's awareness that its electronic modules were being sold by Vanderhall in the state of Texas. (Dkt. # 29 at 8.) Stambro, however, argues this is not true because GM had actual or constructive awareness that its electronic modules were sold in Texas, and further asserts that Vanderhall's sale of GM's modules on its three-wheeled vehicles in Texas is not the "unilateral activity of another party or third person" contemplated by the Magistrate Judge. (Dkt. # 30 at 8.)

A court may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." Luv N' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit utilizes a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the

defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009). Importantly, "'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce,' but 'the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" Id. (quoting ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012); Luv N'care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 470 (5th Cir. 2006)).

Upon careful de novo review of the matters, the Court agrees with the findings of the Magistrate Judge. The sworn declaration of GM's Senior Technical Expert of Vehicle Performance is evidence that GM's sale of component parts to VMW lacked a relationship with Texas, and that GM did not have knowledge or control over where such parts would end up being sold or located after vehicle installation. (Dkt. # 4-4.) Among others, the declaration states that:

> 13. GM LLC did not make any sales of any parts to Vanderhall in Texas.
>
> 14. None of the parts that Vanderhall supposedly bought from GM LLC that Vanderhall later incorporated into the Subject Vehicle originated from suppliers in Texas.

> 15. After selling the parts to Vanderhall, GM LLC has no knowledge or control over where the parts ended up.

(Id.)  As the Magistrate Judge found, in response, Plaintiff fails to controvert this evidence with anything other than a map on VMW's publicly available website which shows store locations in Texas.  (Dkt. # 13-9.)  This evidence, however, fails to rebut the testimony of GM's Senior Technical Expert that GM has no control of where parts end up after their sale.  Thus, Plaintiff has failed to show how GM placed its product in the stream of commerce, much less whether this stream was sufficiently directed toward the forum state of Texas.  While the Court must take Plaintiff's uncontroverted allegations as true, it does not extend to allegations which have been contradicted by GM's evidence.  See Wyatt v. Kaplan, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits.").

Furthermore, the Court notes that the Fifth Circuit declines to find sufficient contacts where a defendant supplies a component part but does not control the final product's sales or marketing.  Zoch v. Magna Seating (Ger.) GmbH, 810 F. App'x 285, 292–93 (5th Cir. 2020) (holding seat manufacturer had insufficient contacts with Texas in product-liability action over automobile).  It may find otherwise if the plaintiff provides sufficient evidence of control over the

9

product's marketing or awareness that it might end up in the forum state. Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 179 (5th Cir. 2013) (holding poultry forklift manufacturer had sufficient contacts with Mississippi because Mississippi was fourth-largest poultry-producing state in the country and manufacturer did not limit its marketer's territory).

GM may have manufactured certain parts used in VMW's product, but based on Plaintiff's allegations, it only manufactured the products for use as component parts.  Plaintiff fails to allege GM had any involvement in the final product's sales, marketing, or advertising.  He also fails to allege how the products made their way to Texas other than by VMW's own "unilateral activity" in doing so.  See Zoch, 810 F. App'x at 290.  In other words, Plaintiff's allegations reflect that GM's product came to Texas "through the actions of third persons unrelated to" GM.  See Lott v. Taishan Gypsum Co., Ltd., No. 1:17-CV-217, 2020 WL 7388431, at *2 (S.D. Miss. Dec. 16, 2020) (finding lack of minimum contacts where third party brought defendant's drywall to Mississippi for use in homes). Thus, Plaintiff fails to present evidence rebutting GM's evidence that GM did not have awareness that its parts would be put into vehicles later sold in Texas and thus has not established minimum contacts.  Because he fails to show a prima facie case of specific jurisdiction, the Court denies his request for jurisdictional discovery,

grants GM's motion to dismiss for lack of jurisdiction, and dismisses it without prejudice from the action.

  C. <u>Specific Personal Jurisdiction Over Hall</u>

  Plaintiff also objects to the Magistrate Judge's finding that Hall was not subject to specific personal jurisdiction in Texas. (Dkt. # 30 at 14.) According to Plaintiff, Hall played an integral role in the design, manufacture, testing, and marketing of the Vanderhall Venice, including holding the vehicle out as its own product on an advertisement on its website. (<u>Id.</u>) Plaintiff also relies on its evidence presented in its underlying response to the motion to dismiss to support its objections. (<u>Id.</u>)

  The Court agrees again with the Magistrate Judge's findings regarding Hall. Like GM, Hall also attached to its motion to dismiss a declaration from its counsel averring that Hall does not sell any products at all, has never put a product into the stream of commerce, and "has never created, controlled, or employed a distribution system that brought vehicles, parts, or accessories into Texas." (Dkt. # 19-1.) In fact, Hall states that it does not and has never conducted business in Texas. (<u>Id.</u>) In response, Plaintiff presents testimony from VMW's lead engineer and chief technology officer who testified that Hall works as a consultant for VMW's "new electric power trains." (Dkt. # 22-10 at 3–4.) The testimony also indicates that despite Hall's contention that it played no role in the Vanderhall

11

Venice, Plaintiff's evidence indicates that it played a role in the development and design of the vehicle. (Id. at 7–11.) The evidence presented also indicates that Hall owns the patents used in the Vanderhall Venice. (Id. at 4–5.) Despite this evidence, however, the Court agrees with the Magistrate Judge that it is insufficient to establish a prima facie case of personal jurisdiction over Hall under a stream-of-commerce theory.

Unlike cases in the Fifth Circuit where a patent owner not only "transferred a helpful patent" to the creator of a product, but also "greenlighted its sale worldwide, held the product out as its own, independently promoted the product," as well as exercised control over its design and promotion, see, e.g., In re De Puy Orthopedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig., 888 F.3d 753, 780 (5th Cir. 2018), here, Plaintiff's evidence of Hall's involvement in the design of the Vanderhall Venice indicates that, at most, it was a "contribut[or]" or an "ad hoc" consultant whose recommendations had to be approved by VMW before they were implemented. (Dkt. # 22-11 at 5.) And, evidence that Hall promoted the Vanderhall Venice on its website does not amount to evidence that Hall in fact participated in its sales or distribution of the vehicle.

Given the above, the Court finds, as did the Magistrate Judge that Hall's ownership of the patents, contribution to the design of the Vanderhall Venice, and image of the vehicle on its website fails to establish a prime facie case

of personal jurisdiction over Hall based on a stream-of-commerce theory. There is no evidence that Hall placed the vehicle into the stream. And, because Plaintiff fails to show a prima facie case of specific jurisdiction, the Court also denies his request for jurisdictional discovery on this matter. The Court grants Hall's motion to dismiss for lack of jurisdiction and dismisses it without prejudice from the action.

After having taken a de novo review of the matters to which Plaintiff objects, the Court will adopt the Magistrate Judge's Report in full. Furthermore, Judge Howell's findings to which there were no objections have been considered by this Court and found to be neither clearly erroneous nor contrary to law and thus they will also be adopted.

D.      Bankruptcy Stay

Given that the Court has dismissed both GM and Hall from this litigation, the Court finds no need to determine whether the automatic stay issued in this case against Hall should be applied to the remaining defendant in this case, VMW.

CONCLUSION

Having reviewed the Magistrate Judge's findings and conclusions and finding no errors, the Court will accept and adopt the Report and Recommendation for the reasons stated therein. Thus, the Court **ADOPTS** the Magistrate Judge's

Report and Recommendation as the opinion of the Court (Dkt. # 29) and **GRANTS** both GM's Rule 12(b)(2) Motion to Dismiss (Dkt. # 4) and Hall's Rule 12(b)(2) Motion to Dismiss (Dkt. # 19).  GM and Hall are **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED.**

    **DATE:** Austin, Texas, May 9, 2025.

_____
David Alan Ezra
Senior United States District Judge